# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRIAN WALKER, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2234** |
| **MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **SECTION "R" (3)** |

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and supplemental security income ("SSI") under Title XVI of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

## I.   BACKGROUND

Plaintiff filed applications for a period of disability and for DIB and SSI on September 22, 2009, alleging a disability onset date of June 13, 2008. (Adm. Rec. at 110). Plaintiff alleged disability due to pain from his lower back, down his left leg into his feet. (*Id.* at 27). Plaintiff, born on December 17, 1977, was 30 years old on the date on which he alleged disability and 32 years old at the time of the final administrative decision. (*Id.* at 11-18, 110). Plaintiff has a high school

education and past work experience as a corrections officer, truck driver and mail clerk. (*Id.* at 130).

Defendant initially denied plaintiff's application on November 24, 2009. (*Id.* at 34-36). Plaintiff sought an administrative hearing, which the agency held on July 12, 2010. (*Id.* at 8-21). Plaintiff and vocational expert Thomas J. Meunier Jr. both testified at the hearing.

On August 16, 2010, the administrative law judge ("ALJ") issued a decision in which he found that plaintiff did not meet the definition of disability through the date of the decision. (*Id.* at 11-18). In the decision, the ALJ concluded that plaintiff has the severe impairment of status-post back injury. (*Id.* at 13). The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 14). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work (*Id.*). He concluded that plaintiff could not perform his past work, but that, after consideration of plaintiff's age, education and work experience and in conjunction with the Medical-Vocational Guidelines, his RFC would not preclude performing work that exists in significant numbers in the national economy. (*Id.* at 17). The ALJ thus denied plaintiff's application for DIB and SSI. (*Id.* at 18).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not disabled. (*Id.* at 6-7). On July 13, 2011, the Appeals Council denied plaintiff's request. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

**II.     STANDARD OF REVIEW**

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner

2

as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v.*

*Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

4

can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

There are three issues on appeal:

(1)　　Whether substantial evidence supports the ALJ's determination of plaintiff's case onset date.

(2)　　Whether the ALJ erred when he failed to take into account a closed period of disability.

(3)　　Whether the ALJ erred when he failed to take into account the plaintiff's subjective complaints of medication side effects when he determined plaintiff's RFC.

## V.　ANALYSIS

### 1.　Whether substantial evidence supports the ALJ's determination of plaintiff's case onset date.

Plaintiff first argues that the ALJ erred when he used June 13, 2008 as the disability onset date in his evaluation and claims that he is uncertain how this date originated in the record. He contends that, "apparently, the Social Security worker who took his application over the telephone misunderstood the correct year in which Mr. Walker became disabled or entered the wrong information into the system." In support of a contrary onset date, plaintiff relies on evidence in the record indicating unemployment beginning after an accident occurring on June 14, 2004, coupled with continuous treatment from 2004 through 2009.

However, a review of the record reveals that plaintiff failed to allege that the stated onset date in the record was incorrect or that there was an alternative onset date. A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder, but can set aside factual findings which are not supported by substantial evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler*, 705 F.2d 123,

125 (5th Cir. 1983). To make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

On September 22, 2009, plaintiff filed an application for DIB and application for SSI, in which the onset date given is June 13, 2008. (Adm. Rec. 110, 117). The contents of these applications were developed during an interview with the plaintiff conducted by an employee of the Social Security Administration. A summary of the plaintiff's statements transcribed onto the applications were then sent to the plaintiff instructing him to:

- Review the summary to ensure we recorded your statements correctly.
- If you agree with all your statements, you may retain this information for your records.
- If you disagree with any of your statements, you should contact us within 10 days after the date of this notice to let us know.

(*Id*. at 113). A reminder was given to plaintiff that the information on the application is declared to be true and correct to the best of his knowledge, as well as a warning that it is considered perjury to provide false information. (*Id*. at 112, 119). A response from plaintiff to the Social Security Administration following the submission of his claims applications to correct the onset date recorded is absent from the record. From plaintiff's inaction it can logically be inferred that the disability onset date of June 13, 2008 stated in both applications is correct.

In addition to plaintiff's initial claims applications, the June 13, 2008 onset date continues to be used throughout various documents contained in the record. On September 27, 2009, a Disability Report was taken of the plaintiff at the field office. (*Id*. at 125-134). Under the subsection "Identifying Information," answer fields are designated for "2. Claimant's Alleged Onset Date," "3.

7

Potential Onset Date (if different from above)," "4. Reason for Potential Onset Date," and "5. Explanation of Potential Onset Date, when applicable." (*Id*. at 125). The only field with an answer was the alleged onset date, reported as 6/13/2008. (*Id*.) Two more documents reciting the June 13, 2008 onset date are the Physical RFC Assessment by DDS, dated November 24, 2009, and the Certified Earnings Records, dated January 7, 2010. (*Id*. at 121, 205). While medical evidence is contained in the record regarding treatment of the plaintiff commencing in 2004, the only date given for disability onset is June 13, 2008. All of the aforementioned documents in the record have been disclosed to the plaintiff without objection as to the stated onset date. The Court finds there to be substantial evidence contained in the record to support the ALJ's use of the June 13, 2008 onset date.

Moreover, defendant raises the issue that plaintiff and his counsel neglected to revise the alleged incorrect onset date until the filing of the instant appeal. Defendant relies on *Carey v. Apfel* to argue that this contention must be raised by a claimant at the administrative level and not for the first time in federal court. *Carey*, 230 F.3d at 146-147. Specifically, plaintiff's disability application does not mention an alternate disability onset date, nor was the error raised at the hearing the ALJ conducted on his application. (Adm. Rec. at 110-116, 22-33). Accordingly, plaintiff waived this claim from being raised on appeal. *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (holding that plaintiff waived claim when he failed to allege an error in his disability application or at the administrative hearing).

Plaintiff argues that because the ALJ used the incorrect onset date, he failed to consider medical treatment that occurred from the allegedly correct onset date. However, in his decision, the

ALJ considers the entirety of the medical evidence provided, including records dated prior to the June 13, 2008 onset date, as far back as the alleged June 14, 2004 onset date. (Adm. Rec. At 14-17). After evaluating the medical evidence contained in the record the ALJ concluded the following:

> In evaluating persuasiveness of testimony, the undersigned notes the claimant's absence of consistent treatment seems inconsistent with the alleged severity of his pain and limitations related to back pain. Primarily the evidence of record is prior to the alleged onset date of June 13, 2008 (Exhibits 5F-13F) and treating physician Dr. Hamsa, reports only conservative treatment was in order, notes that the claimant reached maximum medical improvement in March 2008, and recommends vocational rehabilitation. This treatment history diminishes the persuasiveness of the claimant's subjective complaints and alleged limitations.

(*Id*. at 14-15). The ALJ considered medical treatment prior to the June 13, 2008 onset date and found the objective medical evidence to be inconsistent with plaintiff's testimony. Accordingly, this argument fails.

## 2. Whether the ALJ erred when he failed to take into account a closed period of disability.

Plaintiff next contends that the ALJ erred when he failed to consider whether plaintiff was entitled to a closed period of disability. He argues that the ALJ only evaluated a disability period starting from June 13, 2008, but if the proper onset of June 14, 2004 had been evaluated it is likely that a closed period of disability would have been considered. Defendant maintains that the ALJ considered the entire record, including objective medical evidence and subjective testimony on events dating back to 2004. Defendant relies on *Walters v. Barnhart* to assert that the plaintiff bears the burden to present evidence of the beginning of disability, which plaintiff here fails to meet. *Walters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The court finds that, similar to failing to correct the stated onset date, plaintiff failed to present a closed period of disability for the ALJ to

consider. In fact, the Disability Report taken at the field office inquired whether the case at hand is a "closed period case," to which the plaintiff answered "no." (Adm. Rec. at 125).

Plaintiff argues that the ALJ had a duty to make a determination regarding a closed period of disability under Social Security Ruling 82-52 and was required to present a "specific rationale if he finds that there is a disability of insufficient duration." As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000) (citing 42 U.S.C. § 423(d)(1)(A)); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987). To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

In evaluating plaintiff's claim for disability, as stated above, the ALJ considered medical evidence contained in the record before the June 13, 2008 stated disability onset date. He begins with the clinic records from Metairie Orthopedic where plaintiff received treatment following his June 14, 2004 accident from Dr. R. Vaclav Hamsa.. (Adm. Rec. at 15). On October 25, 2004, "he was diagnosed with a lumbar spine discogenic sprain and small-herniated nucleus pulpous at L5-S1 with degeneration." (*Id.*). The ALJ noted that the diagnosis was fair to good, and "physical restrictions at this time included occasional lifting of 30 pounds and frequent lifting of 15 pounds;

10

no prolonged bending or stooping; and no crawling, kneeling, or squatting." (*Id.*).

However, the regulations require only that the ALJ develop plaintiff's medical history as follows:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

20 C.F.R. § 404.1512(d). Thus, the ALJ noted that on September 16, 2008, Dr. Hamsa issued treatment "for a diagnosis of ruptured lumbar disc at L5-S1 as a response to EMG studies recognition of inflammation within the facet joints." (Adm. Rec. at 15). The doctor found conservative treatment to be in order, and the plaintiff was "felt to be at maximum medical improvement" with a "5% permanent whole man impairment based on the disc rupture and the continued signs and symptoms of muscle, pain and reduced range of motion." (*Id.*). A follow-up visit with Dr. Hamsa in April of 2009 yielded the same results. In plaintiff's last update with Dr. Hamsa on September 9, 2009, the doctor "encouraged the claimant at that point and time to see about his vocational rehabilitation while advising him to go through truck driving school." (*Id.*). In Dr. Hamsa's report, it was noted that after the doctor informed plaintiff that he could apply for a commercial license class #4, for truck driving, bus driving, and limo driving, plaintiff became visibly frustrated and asserted that he has applied for light work activity employment at 15-20 places. (*Id*. at 15-16). The doctor released plaintiff, advising him to "return on an as needed basis." (*Id*. at 16).

Additionally, the ALJ considered the evidence provided by Bret Rothaermel, M.D. of his

November 14, 2009 examination of the plaintiff. (*Id*.). During the examination, which was requested by the state agency, plaintiff asserted that he was able to perform daily activities without assistance. (*Id*.). Dr. Rothaermel noted that plaintiff appeared "comfortable throughout the examination. He had ease getting on and off the table, was able to take his shoes on and off, and ambulated without difficulty in the clinic hallway." (*Id*.). At the conclusion of his examination Dr. Rothaermel diagnosed plaintiff with chronic radicular low back pain, but indicated that he "appeared to have no significant functional impairment that would preclude him from performing work related activities." (*Id*.).

In addition to considering the medical evidence in its entirety, the ALJ weighed the plaintiff's subjective testimony as well as evidence of his daily life contained in the record. He concluded:

> There are also some significant inconsistencies between the claimant's testimony and the evidence of the record. For example, the claimant testified that since 2004 he gets his kids off to school and essentially sleeps most of the day until it is time to pick them up and then he sleeps again in the evening (he does no cooking or household activities). However, the Function Report submitted during the application process and information given at the consultative examination indicates that he provides for his children, takes care of his personal needs, cooks, performs household chores, drives a car, shops in stores (food, clothes and electronics), goes to the movies, goes to dinner, and plays video games and computer games and "goes out a lot". He has no problem with handling stress.

(*Id*. at 16-17). Based on plaintiff's level of activity evidenced in the record and his treating physician's opinion that maximum medical improvement has been reached, coupled with plaintiff's own testimony that he would return to work if he could secure employment, the ALJ found plaintiff to have a residual functional capacity for a full range of light work. (*Id*.).

12

SSR 82-52, on which plaintiff relies, is applicable in circumstances wherein the reason the claim is denied is because the disability will not meet the 12-month duration requirement. Such is not the case here; the ALJ determined that there was no period of disability as defined under the Act, not that there was a disability of insufficient duration. Since the alleged impairment must first be found to qualify as a disability before SSR 82-52 applies, this argument is without merit.

> **3. Whether the ALJ erred when he failed to take into account plaintiff's subjective complaints of medication side effects when he determined plaintiff's RFC.**

Lastly, plaintiff contends that the ALJ erred when he failed to account for plaintiff's medication side effects when he determined his RFC. In support of this contention, plaintiff points to a portion of the transcript from his hearing wherein plaintiff testified that the pain medication Percocet and Soma he takes results in drowsiness, which affects his concentration. He stated that the drowsiness lasts a few hours in the morning and the evening, following each dose of medication, which causes him to lie down throughout the day. Plaintiff testified that he also takes Valium, a medication to assist him in sleeping at night, since he is typically restless in the evening from having laid down during the day.

In support of his argument, plaintiff cites *Loza v. Apfel*, which established that the Commissioner is required to make findings regarding the effect of medicines prescribed. *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). He also relies on *Crowley v. Apfel* to argue that consideration must be given to the type, dosage, effectiveness, and side effects of medications. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). However, plaintiff cites the Court to no objective medical evidence in the record to support his argument. Where a claimant's statements

about "the intensity, persistence, or functionally limiting effects of pain or other symptoms" are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p (1996). The Fifth Circuit has held that the ALJ need not give subjective evidence precedence over medical evidence but that "a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).

> With regard to plaintiff's medication side effects, the ALJ surmised:
>
> The claimant testified that he suffers from a 2004 back injury obtained during a work-related incident and has left him unable to work since the incident. According to the claimant, he now has low back pain that radiates down his left leg into his foot at various times daily. He said that he is compliant with prescribed medications Soma, Valium, and Percocet. However, the medication side effects include drowsiness and lack of concentration. Consequently, he has to lie down for a couple of hours (morning and evening) after taking his medication. The claimant estimated that he could stand about 30 minutes at a time, walk 15 to 20 minutes at a time, and lift nothing heavier than bread or milk. During a normal day he indicated that, he drives his children to school and returns to pick them up but otherwise "lie[s] down during the day."

(Adm. Rec. at 15). The ALJ then ultimately concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(*Id.*).

It is not the province of this Court to re-weigh the evidence before the ALJ but only to determine whether substantial evidence supports the ALJ's conclusion. *Carey*, 230 F.3d at 135. Here,

14

there is substantial evidence to support the ALJ's evaluation of plaintiff's testimony regarding side effects of his medications. While plaintiff correctly notes that he gave testimony at his hearing to show that he suffers from drowsiness and lack of concentration, this Court will not reverse the ALJ's conclusion unless it can not find substantial evidence to support it. That is not the case here.

## VI. CONCLUSION

Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusions here. Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27th day of August, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**